31 C.C.P.A. (Patents)

## In re HEATH.

### Patent Appeal No. 4832.

United States Court of Customs and Patent Appeals.

May 22, 1944.

Rehearing Denied June 26, 1944.

John Flam, of Los Angeles, Cal. (Israel R. Paris, of Washington, D. C., of counsel), for appellant.

W. W. Cochran, of Washington, D. C. (E. L. Reynolds, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, and JACKSON, Associate Judges.

BLAND, Associate Judge.

Upon a single reference, namely, the British patent to Hartmann, No. 244,228, December 17, 1925, the Primary Examiner of the United States Patent Office rejected all the claims, 10, 11, 12, 14, and 15, in appellant's application for a patent relating to a mat for use in connection with stencils. Upon appeal, the Board of Appeals affirmed the decision of the examiner, and the applicant has here appealed.

The alleged invention of the instant application relates to a mat for use in connection with stencils having a displaceable impervious coating, said mat having a series of closely spaced protuberances which, according to the claims, have substantially entirely convex surfaces. One of the claims calls for spacing the protuberances "of the order of one one-hundredth (.01) of an inch", and another claim calls for "no less than one hundred protuberances and no more than one hundred sixty" to the linear inch. Appellant's mat is stated to be suitable for use in producing a design or picture having portions similar to a half-tone print. The stencil sheet may comprise an impervious layer and a tenuous tissue layer. The impervious layer is formed of a coating which may be displaced by pressure so as to expose pervious areas of the tissue layer, through which the printing ink may pass. The stencil is laid over the mat, and pressure is applied to the stencil by means of a stylus, which is moved over the portions representing the letter or design. In appellant's process, the impervious coating of the stencil is pushed aside and rests in spaces between the protuberances of the mat.

Claim 10 is representative of all the appealed claims. It reads as follows:

"10. A mat for use in connection with stencils having a displaceable impervious coating, said mat having a series of closely spaced protuberances, the tops of the protuberances being formed substantially entirely as a convex surface, and the protuberances having depth below the convex surfaces to define spaces of substantial volume."

The Hartmann patent relates to a method or means for producing stencils for duplicating apparatus. He shows a transparent sheet provided on one side with fine hatchings or grains having the structural appearance of a fine file surface. The transparent sheet or "file plate" may be of celluloid and may be provided with the necessary roughened surface by being heated or otherwise softened and then having pressed against it a "suitable fine fabric, which is removed from the plate when cool."

It was the view of the examiner that the material used in making the plate or sheet may be the same as that of the appellant. He was of the opinion that the statement in the Hartmann patent that the surface is a "file plate" does not necessarily mean that the protuberances are sharp-pointed. He stated that: "This is true because the plate is made by softening the surface of a sheet of material made of Celluloid and 'pressing against it, while in this plastic condition, a suitable fine fabric, which is removed from the plate when cool.'" He was of the opinion that the process did not

form sharp points any more than did appellant's process.

The claims involved are not process claims, but the manner of making the article is specifically set out in the specification and comprises pressing down upon the plastic heated surface of the mat, a fine-mesh wire fabric. This fabric is pressed down in such a manner as to cause, according to appellant, rounded-top protuberances. When the mat is in use with the stencil laid over it and pressure is applied by means of the stylus, the soft impervious coating of the stencil is displaced around the tops of the protuberances on the mat, and the underlying pervious layer of the stencil is exposed (which is the same process as in the reference). Ink will then filter through the exposed portions of the stencil in the quantities desired, depending upon the speed of printing, the fluidity of the ink, and the size of the pervious openings.

After taking an appeal to the board, appellant filed an affidavit, and the case was remanded to the examiner for report. The affidavit relates to tests performed upon a mat made in accordance with appellant's application and upon a mat purportedly made in accordance with the process of the Hartmann patent. In making the latter mat, appellant used a fine silk fabric. Photographic exhibits accompanying the affidavit show the results of the tests. The examiner was of the opinion that the test, so far as concerned the mat purportedly made in accordance with the process of Hartmann, was not a fair test because the silk fabric used by the appellant in making the mat was of such a character with respect to its number of threads per inch, its loose weave, and probably other considerations, that it was not the "suitable fine fabric" to which Hartmann had referred. It was the view of the examiner that one desiring to make a proper stencil mat by the process stated would select, as a "suitable fine fabric", a fabric which had hard, twisted threads and of such a weave as to permit protuberances to be formed by the pressure of the fabric upon the plastic surface of the mat.

The Board of Appeals agreed with the examiner's conclusions that there was nothing inventive in the subject-matter of the claims in appellant's application over that of the reference, and that the differences urged by appellant involved only a matter of degree. The board said:

"It is our view that the examiner's position is sound. The patentee apparently desires a mat which will be suitable for the making of stencils. This mat has a roughened surface formed by impressing a fabric into the mat after it has been softened by heat. The patentee employs a "suitable" fabric for this purpose. If a fabric is to be suitable it must necessarily have threads which will form distinct impressions in the surface, and without doubt the patentee would not use a fabric with soft loose threads but one having distinct tightly twisted threads. If such a fabric be used it would necessarily form protuberances of the same general character as in appellant's device. The depth of the spaces between the protuberances will depend on the depth to which the fabric is pressed into the mat and on the size of the threads. This difference in depth and volume of the spaces is merely a matter of degree. It is our view that the patent is a fair reference against all of the claims. The claims which specify the distance between the protuberances are believed to be met in all substantial respects by the reference."

We think the board has made full and complete answer to the contentions of appellant. We are in agreement with the conclusions of the board, and its decision affirming that of the examiner is affirmed.

Affirmed.